Filed 10/30/24  P. v. Thomas CA1/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ELIJAH THOMAS,<br><br>        Defendant and Appellant. | A169793<br><br>(Alameda County<br>Super. Ct. No. 159964B) |

Elijah Thomas appeals from the trial court's denial of his petition under Penal Code[1] section 1172.6.  Thomas claims he made a prima facie showing under that section, entitling him to a hearing on whether his conviction for attempted murder must be vacated.

The trial court correctly determined Thomas is not eligible for relief under section 1172.6 because the record of conviction conclusively demonstrates that he was not convicted of attempted murder under the natural and probable consequences doctrine.  We shall affirm.

---

[1] Undesignated statutory references are to the Penal Code.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A.    *Thomas Is Convicted of Attempted Murder*

Thomas's conviction arose from a shooting he perpetrated with a codefendant, Mark Candler.[2]  The shooting victim was a leader in an Oakland street gang who got into a confrontation with a rival gang member associated with Candler.  Later in the same day as that confrontation, Thomas and Candler arrived at the victim's location in two separate vehicles, each armed.  Police heard over 30 gunshots fired in rapid succession and encountered a vehicle fleeing the scene, but were unable to apprehend it.  There were numerous shell casings from two different weapons at the scene, and "pock-marked" homes from gunfire, but no witnesses would speak to the police.  Two years after the events, witnesses including the victim made statements to the police identifying Candler and Thomas as the shooters.  By the time of trial, the victim had been killed and the other witnesses recanted.  Their prior statements were related to the jury through recordings or the testimony of investigating officers.

Thomas and Candler were charged with attempted murder (§§ 187, subd. (a), 664) and shooting at an inhabited dwelling (§ 246).  Each charge was accompanied by allegations that the defendants acted in association with a criminal street gang (§ 186.22, subd. (b)(1)) and personally discharged a

---

[2] We recite, for context, the factual background of the shootings as described in our prior opinion in this case (*People v. Thomas* (May 22, 2012, A130350) [nonpub. opn.]).  We do not consider the factual background in assessing the merits of the appeal based on the trial court's denial of the section 1172.6 petition at the prima facie stage.  (See *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1237–1238.)  We do not consider the more detailed factual background set forth in the People's brief.  That background is apparently drawn from the record in Thomas's prior appeal, which is not before us.

firearm causing great bodily injury (§§ 12022.7, subd. (a), 12022.53, subds. (b), (c) & (d), 12022.5, subd. (a)).

The jury was instructed on the elements of the two counts.[3] The attempted murder instruction required the People to prove a defendant both (1) "took direct but ineffective steps" to kill another person and (2) "intended to kill that person" to establish guilt. (Former CALCRIM No. 600.) The jury was instructed with former CALCRIM No. 400 as follows: "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator, who directly committed the crime. A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator. [¶] Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime." The jury was instructed in relevant part that to prove guilt through aiding and abetting, the People must prove that the perpetrator committed the crime, the defendant "knew that the perpetrator intended to commit the crime," "intended to aid and abet the perpetrator in committing the crime," and provided such assistance in fact. (CALCRIM No. 401.) There was only one instruction that referenced natural and probable consequences, which we recite in full given its centrality to this appeal: "Under certain

---

[3] The People submitted the jury instructions with their response to Thomas's section 1172.6 petition. According to Thomas's reply, the "court file in [his] case does not contain any information about what instructions were given to the jury," but his codefendant's file "contain[s] a copy of certain jury instructions with a paper cover sheet indicating [they] were given to the jury" in both cases. Thomas did not object to the trial court's reliance on the instructions submitted below and does not object to us relying on them now.

circumstances, a person who is guilty of one crime may also be guilty of other crimes that were committed at the same time. In these circumstances, a person who aids and abets the commission of one offense—called the 'target offense'—may be guilty of another offense that is the natural and probable consequence of the target offense—called the 'non-target offense.' [¶] To prove that the defendant is guilty of shooting at an inhabited house under this theory, the People must prove that:

"1.　　The defendant is guilty of attempted murder;

"2　　During the commission of the attempted murder, a coparticipant in that crime committed the crime of shooting at an inhabited house; [¶] AND

"3.　　Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of shooting at an inhabited house was a natural and probable consequence of the commission of the attempted murder.

"A *coparticipant* in a crime is the perpetrator or anyone who aided and abetted the perpetrator. It does not include a victim or innocent bystander. [¶] A *natural and probable consequence* is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence. If the shooting at an inhabited house was committed for a reason independent of the common plan to commit the attempted murder, then the commission of the shooting at an inhabited house was not a natural and probable consequence of the attempted murder. [¶] To decide whether the crime of shooting at an inhabited house was committed, please refer to the separate instructions that I give you on that crime." (CALCRIM No. 402.)

4

After a joint trial, the jury found Thomas and his codefendant guilty as charged and found the enhancement allegations true. Thomas was sentenced to 40 years to life in prison.

## B.    *Section 1172.6*

Attempted murder requires a specific intent to kill. (*People v. Mumin* (2023) 15 Cal.5th 176, 190.) When Thomas was convicted, a defendant could be liable for attempted murder under the theory that the defendant aided and abetted a crime where attempted murder was a natural and probable consequence. (*People v. Estrada* (2024) 101 Cal.App.5th 328, 336.) "Under the law at that time, it was not necessary to prove that the defendant intended that the attempted murder be committed or even that the defendant subjectively foresaw that attempted murder could result." (*Ibid*.)

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) (Stats. 2018, ch. 1015) ended this form of liability for attempted murder by amending section 188 to provide that " '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' " (*People v. Curiel* (2023) 15 Cal.5th 433, 449 (*Curiel*); *People v. Sanchez* (2022) 75 Cal.App.5th 191, 196 (*Sanchez*).) The legislation created a procedure (then embodied in section 1170.95) for those convicted of murder under the natural and probable consequences doctrine to seek relief. (*Curiel*, at p. 449.) Senate Bill No. 775 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 551) clarified and amended the statute, extending it to those convicted of attempted murder under the natural and probable consequences doctrine (§ 1172.6, subd. (a)(1)). (See *People v. Delgadillo* (2022) 14 Cal.5th 216, 223, fn. 3.) The Legislature renumbered former section 1170.95 to section 1172.6. (*Delgadillo*, at p. 223, fn. 3.)

The statutory procedure " 'begins with the filing of a petition containing a declaration that all requirements for eligibility are met ([§ 1172.6], subd. (b)(1)(A)), including that "[t]he petitioner could not presently be convicted of . . . attempted murder because of [the] change[] to . . . Section 188 . . ." . . . (§ 1172.6, subd. (a)(3)).' " (*Curiel*, *supra*, 15 Cal.5th at p. 450.) If the petition is facially adequate, the trial court must appoint counsel for the petitioner upon request. (§ 1172.6, subd. (b)(3).) Briefing is submitted and a hearing is held. (*Id.*, subd. (c).) The court must " ' "determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c); [citation].) If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. (See § 1172.6, subd. (c); [citation].)' " (*Curiel*, at p. 450.) If not, the court must issue an order to show cause and hold a further hearing to determine whether to vacate the conviction and resentence the petitioner on any remaining counts. (*Ibid.*; § 1172.6, subds. (c) & (d).)

## C.    *The Trial Court Denies Thomas's Section 1172.6 Petition*

Thomas filed a facially valid section 1172.6 petition. The trial court appointed counsel for Thomas and ordered the People to file a response.

In their response, the People argued Thomas failed to show he could not be convicted of attempted murder under current law, since the natural and probable consequences instruction in his case identified attempted murder as the target offense to support a conviction for shooting at an inhabited dwelling. Thomas filed a reply, urging that since the jury was never told not to "apply the instruction in the reverse" to find him guilty of attempted murder as a consequence of shooting at an inhabited dwelling, the record did not conclusively show he was not convicted on that theory.

6

The trial court heard oral argument and found Thomas had failed to make a prima facie showing. The court noted that it "went through the record of conviction," specifically "the jury instructions" and "the verdict forms." The court observed that "the only place in these instructions where natural and probable consequences comes up is in [CALCRIM No.] 402," which "requires the jury to [find]" the defendant "guilty of attempted murder" as the target offense. The court deemed it mere "speculation" and not "reasonable" to conclude the jury might have ignored the specific direction provided by that instruction and "flipped" it to find Thomas guilty of attempted murder on a natural and probable consequences theory. The court denied Thomas's petition.

## II.  DISCUSSION

Thomas claims the record before the trial court did not establish he was ineligible for relief under section 1172.6, so the court erred in denying his petition. We disagree.

### A.    *Standard of Review*

A trial court's decision to deny a section 1172.6 petition at the prima facie stage " ' "is a purely legal conclusion, which we review de novo." ' " (*People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865 (*Lovejoy*).) "In making its evaluation, the court may review the record of conviction—including the charging documents, jury instructions, verdicts, and to a limited extent any prior appellate opinion—to determine if the petitioner's allegations are conclusively rebutted by the record." (*Id.* at pp. 864–865.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 972.) "At the prima facie stage, a court must accept as true a petitioner's allegation that he

7

. . . could not currently be convicted of a homicide offense . . . , unless the allegation is refuted by the record.  [Citation.]  And this allegation is not refuted by the record unless the record conclusively establishes every element of the offense." (*Curiel, supra,* 15 Cal.5th at p. 463.)  "[F]actual findings . . . necessarily reflect[ed]" by the jury's verdicts are preclusive.  (*Id.* at p. 465.)  "As a 'general rule,' courts presume that juries can and will dutifully follow the instructions they are given, including instructions that limit a jury's consideration of evidence for certain purposes." (*People v. Washington* (2017) 15 Cal.App.5th 19, 26.)

## B.     Analysis

The trial court correctly determined based on the given instructions that the jury's necessary findings of fact established conclusively that Thomas's attempted murder conviction was not based on the natural and probable consequences doctrine.  As we have recited, the jury was instructed they could convict Thomas of committing attempted murder in two ways: either "directly" or by "aid[ing] and abett[ing] a perpetrator, who directly committed the crime." (CALCRIM No. 400.)  If the jury determined Thomas directly committed attempted murder, they necessarily found that he acted with intent to kill.  (CALCRIM No. 600.)  To convict Thomas on an aiding and abetting theory, the jury was instructed that they were required to find that Thomas "knew that the perpetrator intended to commit the crime," "intended to aid and abet the perpetrator in committing the crime," and provided such assistance in fact.  (CALCRIM No. 401.)  The attempted murder instruction, in turn, required the perpetrator to act with specific "inten[t] to kill" the victim.  (CALCRIM No. 600.)  Thus, to find guilt as an aider and abettor, the jury necessarily found that Thomas knew his codefendant intended to kill the victim and intentionally aided him with knowledge of his unlawful purpose—

8

"the very definition of express malice." (*People v. Lee* (2023) 95 Cal.App.5th 1164, 1191.) This theory of "[d]irect aiding and abetting remains a valid theory of attempted murder," and a defendant convicted on this theory is ineligible for relief under section 1172.6. (*People v. Coley* (2022) 77 Cal.App.5th 539, 548; see also *People v. Lee*, at pp. 1190–1191.)

Thomas contends the jury could also have convicted him on a natural and probable consequences theory of attempted murder by finding that his codefendant—but not Thomas himself—intended and perpetrated attempted murder, while Thomas merely intended to shoot at an inhabited dwelling and aided and abetted his codefendant in doing the same. This argument is not just implausible, it is refuted by the jury instructions and the jury's verdict.[4] The jury instructions given here included the natural and probable consequences doctrine. The trial court instructed with CALCRIM No. 400 that "[u]nder some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime." Taken in isolation, such an instruction might be susceptible to the reading that Thomas suggests. But the court went on to explain those "specific circumstances" with CALCRIM No. 402—which only allowed the jury to apply the natural and probable consequences doctrine as a basis for liability for shooting at an inhabited house *after* they had concluded that Thomas intended to commit or

---

[4] To the extent Thomas claims he could have been convicted on some other theory of imputed malice because "[t]he aiding and abetting instructions" did not themselves require a finding that he "personally acted with express malice," such argument cannot even theoretically establish a prima facie case. "[S]ubdivision (a)(1) of section 1172.6 'applies by its terms only to attempted murders based on the natural and probable consequences doctrine.'" (*Lovejoy, supra*, 101 Cal.App.5th at p. 865.)

9

directly aid and abet attempted murder. CALCRIM No. 402 was limited to use of the natural and probable consequences doctrine to prove a defendant "guilty of shooting at an inhabited house." To find Thomas guilty of shooting at an inhabited house on this theory, the jury first had to find "[t]he defendant is guilty of attempted murder" as the target offense, and "[d]uring the commission of the attempted murder, a coparticipant in that crime committed the crime of shooting at an inhabited house." As noted above, both attempted murder theories on which the jury was instructed remain valid under current law.

Thomas claims that because the instructions did not specifically forbid the jury from " 'flipp[ing]' " the natural and probable consequences theory to find a defendant guilty of attempted murder perpetrated by a coparticipant in a target offense of shooting at an inhabited dwelling, we cannot conclusively know they did not. However, CALCRIM No. 400 did not say the jury could find a defendant who aided and abetted one crime guilty of a second crime without limitation, but expressly qualified the concept. CALCRIM No. 402 followed with the details. CALCRIM No. 200 instructed the jury to pay careful attention to all of the instructions and consider them together. " 'We assume the jury followed the instructions rather than disregarding them.' " (*People v. Estrada* (2022) 77 Cal.App.5th 941, 948 [no prima facie case where CALCRIM No. 400 referenced the natural and probable consequences doctrine but the prosecutor never requested instructions identifying the target offense, such as CALCRIM No. 402]; cf. *Sanchez, supra,* 75 Cal.App.5th at pp. 193–195 [prima facie case established where CALCRIM No. 402 identified the target offense as assault with a firearm and the nontarget offense as attempted murder].) Thomas provides no authority suggesting a prima facie showing under section 1172.6 can be based on a

10

natural and probable consequences theory on which the jury was not instructed. To the contrary, "if the jury did not receive an instruction on the natural and probable consequences doctrine, the jury could not have convicted the defendant on that basis, and the petition should be summarily denied." (*People v. Offley* (2020) 48 Cal.App.5th 588, 599.)

## III.  DISPOSITION

The trial court's order denying Thomas's section 1172.6 petition is affirmed.


HILL, J.*


WE CONCUR:


HUMES, P. J.


LANGHORNE WILSON, J.

---

\* Judge of the San Mateo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.